v. Lyle and Van Praagh. Hi. May it please the Court, my name is Daniel Noter. I represent the defendant appellant, Mr. James Lyle. With the Court's indulgence, I'd like to address the second issue first, because I believe the Court's precedents in Barrow, Oluwanasola, and most recently, this Court's November 1st opinion in United States v. Rosamund, which is 841 F. 3rd 95, conclusively determine the outcome of the proffer issue in this case, which is that the district court committed reversible error when it permitted the government to enter Mr. Lyle's proffer statement. I think in light of this Court's clear statement in Rosamund, that it's settled that merely drawing the jury's attention in an opening statement to the government's lack of proof on an essential element on which the government bears the burden. That's not what happened here. Well, we respectfully, Your Honor, believe that that is what happened. All that trial counsel did was to say that there was a dispute on the issue of whether the government could prove What was the sentence right before that? The sentence right before that was Lyle obtained, bought, borrowed, was given meth for his own use. Well, that was That is an affirmative statement that he was doing this just for personal use. Well, I disagree respectfully, Your Honor, because if you look at the statement right before that, what all trial counsel was doing was repeating what the government had already introduced or not introduced yet because it was opening statements, but had said this is what, you know, Mr. Lyle has done. And what Mr. Lyle's counsel stood up and said is, yes, you know, we agree that he did this. We dispute the issue that goes to the element of count three, which is that he then distributed. So I The problem with these kind of waivers is that counsel has to stay on the right side of them. And I understand that in an opening statement where, of course, the defense has no burden whatsoever, counsel could certainly have stood up and said, I submit that the evidence that the government's going to here suggests that you were making affirmative statements that what he was was a user and that that's that's what the government is arguing is the trigger for the waiver. Well, respectfully, Judge Reggie Failure to be careful and say that what you were challenging was the government's evidence rather than that you were making an assertion as to your client's role. But what I believe, Your Honor, that Rosamond's repeatedly says is that the question is whether the defendant and I'm quoting here offers an alternative version of events inconsistent with the proffer statement. And merely saying that he used drugs himself was not an alternative version. Inconsistent that he wasn't a dealer. Well, but he didn't. He said that we just where we dispute is that he was a dealer. So that he said he bought drugs for personal use. Yes. Meaning he wasn't he wasn't buying them to be a dealer. And that is contradicted by the proffer statement. Well, again, I disagree, Your Honor, because I believe when you look at at all the cases in which the proffers have been upheld, it's a situation where, for example. Well, in in your original, I believe it was Gomez case, you know, where where the where there was the homicide and and the defendant had said, well, we kidnapped him, but we didn't intend there to be a homicide. And then the proffer says, actually, we did intend to kill him. Or in cases where the defendant is actually saying, well, I didn't do it. This other person did it here. All that the opening statement is saying is that there is a dispute as to whether or not he was a dealer, which I submit is merely drawing the jury's attention to the question of proof that the government is going to have to address, which again, Rosamond. Who didn't rule on this immediately? Seemed to conclude that that's not just what you were doing. Why don't we give some deference to that, given the judge's ability to see and hear things that we can't? Well, that's a that's a fair that's a fair point, Your Honor. But I think the reason is because the the government was repeatedly given the opportunity, because when you're right, that when Judge Crotty decided it, it was not until much later to point out anything in terms of testimony or cross-examination argument, anything since then. And the only thing was still that one statement right in the opening statement, saying that there was a dispute about this issue. So while it's true that this court does and should give deference to what the trial court is able to see, the trial court still has to have some rationale, has to actually have something to see. You know, it's sort of like what this court says in Caveira, you know, that this court, the Second Circuit, needs something to be able to review in order to be to do meaningful appellate review. And when the only thing that has been identified as the basis for the district court's decision is this one statement in the opening statement, then respectfully, that doesn't give this court anything besides that to review. I know your time is up, but I do want to ask a question about your encountment. Oh, yes, please. Your client was arrested, as I understand it, both for possession of a knife and for driving without a license, correct? I definitely know the knife. I'm not sure offhand whether he- That was the testimony of the police officer that he was driving with a suspended license. Yes. He was definitely, he definitely, there was no question that he was driving with a suspended license. And there's no question the car was not his? It was a rental car. So why isn't it feasible as evidence of that crime? Of- Driving without a license. He's driving a car he doesn't own without a license. And so I'm just curious as to what your reaction to that is, because you take the view that on the safety theory or whatever, they weren't acting consistent with an established protocol, etc. And I'm asking you whether it was feasible as evidence of the crime. That would not be, it wouldn't be evidence of the knife crime, but if I'm correct that he was arrested for driving without a license, why wouldn't that be? I would raise two brief responses to that. First is that this is a theory that was never raised in the lower court. It's never been briefed. The government did not proceed on the idea that this was- You're arguing that this evidence had to be suppressed. We can see on any basis supported in the record. Well, perhaps, but what I'm saying is that there was never any suggestion that the seizure of this vehicle was done in any way as evidence of the- Do you want to make an argument if we clear that hurdle, or do you just want us to stop at that point? Well, yes, because I don't believe that this traffic law violation is that merely unauthorized use of the vehicle under the rental contract is a crime. And I think the Sixth Circuit stated that in the Stephen Smith case, specifically noting that while you may be using a vehicle in a way that breaches the contract, breach of contract- That's the concern. Driving without a license, you're not suggesting that's not prohibited by New York law? I'm saying that if he were driving his own car, I do not believe that it- That might be a different matter. But even there, the question is here whether someone driving a car without a license- The police don't want to say, well, I wasn't driving. They stopped me on the street. Here's the situation. Here's the car. All right, let's let you rebut after we hear from the government, okay? We're actually- We'll hear first from counsel for Von Braun. Okay. I'm trying to remember how to do this. Sorry. Okay. Okay. I'm going to start. I think the question of whether or not there was sufficient evidence to establish a conspiracy between the two defendants will control in both of our main legal points. So I'm going to start there. And I say that because I don't think a fair reading of the way this statement was presented- I don't think you can conclude that it wasn't a brutal violation. So the real question is whether it was harmless or not. Well, let me ask you that. You challenged the admissibility of the proffer, but then you- I didn't see where. You challenged how it was redacted. That's the argument you're making now. But that argument I didn't see raised below. What I would like to say about that is that's very true. And- It's true that it wasn't raised. In precisely that way. But it appears from the record, and I wasn't there, I don't know, that it was a mistake on the part of the attorney who made a lot of mistakes. But that's a- Relevant here. Not before. Exactly. Okay. But we have to stay with whether or not there was brute error here with respect to your client. The co-defendant made it clear to the judge that it was obvious that who Lila was talking about, even though the names weren't there. So that was enough to- Well, that's refuted because there were a number of players here. But I'm not sure you've pointed out to us where, if the government's redaction is not a problem, co-counsel's inquiries, which, again, I think are not objected to by Mr. Vanbrugh's counsel, somehow create a brutal problem. I don't see that that's clearly established in the law. First of all, let me just say that we don't concede that it was properly redacted. It included some names and left out others, which is a telltale sign. There was no objection, so we're in plain error territory. You're sort of in plain error. I don't want to concede that- Okay. I think it's obvious that she thought she had a continuing objection. But assume, all right, for now, assume plain error. Why is this- Because the evidence there was so- This was such key evidence in the case. It was really the only unvarnished evidence of a conspiracy between the two. And as I said in my brief, I don't think I need to go on here, that was the theory that the government was proceeding on below, was that the conspiracy was between these two fellows. So it was incredibly damaging. The witness mentioned, I mean the redacted statement mentioned four or five, six other individuals? Six other individuals. It was the basic testimony was about three people, one of which was named. Well, four people including the co-defendant, two of which were described as individuals, and one who was named, which was Brandon Hodges, the supplier. Now, in the course of the cross-examination, he said, didn't he mention other names that he only knew the first name? And he said, yes, he did. But that wasn't the gravamen of the confession. It was the three of them. Now, I think even if it had been six, that it would still- Once you have some names mentioned, the juries are not dummies. The question is then, why are some names- Why have some names been purposely redacted? Where is it clearly established that the elicitation of those names on cross-examination by co-counsel is a- Because you have to look- First of all, my client did ask for a- Where is the case law that says that a brutal problem can arise because of co-counsel's inquiries? I think there is no case one way or the other, but I think what you have to look at- It's not a plain error. Because that is- The problem with plain error is that it has to be clearly established at the time of appeal. This is not a novel issue. The issue is the damage that was done to my client, who did request separate trials. I know you want to reserve a fair amount of time in rebuttal, so I want to ask you one more question. Sure. Let's see. The indictment charges and the court charged a conspiracy between the defendants and others. And I'm not sure I understand why your client is not properly found guilty because of his agreement with Mr. Tarantino in the charged conspiracy. Because that wasn't the government's theory. That may not have been their principal argument, but there is no doubt, looking at the trial record, that Tarantino was an admitted member of the conspiracy. The government was free to prove that. The jury was charged, Lyle, Vembra, and others.  It really didn't go to the jury on that theory because the prosecution sets up the case. And it's up to them to- If we're not persuaded by that, is there any other concern with finding your client guilty on the conspiracy with Tarantino? I mean, I think it's just that Tarantino was an admittedly unreliable witness. Oh, but on the sufficiency review, we have to assume he was credited. Okay, thank you very much. I know you'll reserve time for rebuttal. Good morning, Your Honors, and may it please the Court. Michael Ferrara for the government. I did not represent the government in the proceedings below. I'd like to start by addressing the Bruton issue that was just discussed. Here, this is not a case like Taylor where one name was left in and there were two other defendants sitting at the table, and there's clearly a driver and a lookout. There were multiple names mentioned. There's one person sitting at the table. And not ideal that defense counsel decided to elicit names and elicit that they were being left out for legal reasons. But we submit it actually had the effect of further obscuring the fact that perhaps Mr. Van Praagh. Your view is somewhat helpful. It was helpful. It ended up being helpful because there were multiple people referenced in the redacted statement. And then the jury hears four, five, six different names. And it's, I think the fair inference is, oh, those are some of the people he was talking about. So we think it makes it less harmful or prejudicial to Mr. Van Praagh in this particular instance. To move to the issue of the rental car, I'm embarrassed that we did not brief the issue of the seizing. It is evidence, I think, Your Honor, is correct that that is a. I'm not necessarily convinced of it, but I wanted to ask counsel whether that would be a permissible theory of seizure. We believe it would be. And in any event, Your Honor, we believe the other two theories that we briefed are also independent bases. Each of which deal with that. I mean, was there any evidence of an of a protocol for impounding? I understand there was a protocol for the subsequent search. No, there wasn't. It's not it's not in the record. And in fact, if this court were to disagree with our legal theories, you say we should remand if we disagree for fact finding purposes on that. Yes. But we don't think it's necessary. Again, it's important to remember here that what defense counsel is essentially saying is that the officers acted pretextually. That it was unreasonable to impound this car. And in context, that simply fails. The idea that the officers have just arrested someone who has lied to them multiple times. And now they have a car that turns out to be a rental car sitting on a street in midtown Manhattan, which perhaps was legally parked at that moment. But as Judge Crotty certainly knew, would not be legally parked for long. They would have been derelict if they had not. Is it his position that he would have his girlfriend come retrieve the car? That is his position. The officers were absolutely not required to accept that. Someone who had just been lying to them about almost everything else he was asked about. Precisely, Your Honor. This is a person who has just lied. And to go to another defense argument, this idea that, well, he would be out in a few minutes, again, who knows? The Supreme Court in Bertin, I understand what you're saying. But the Supreme Court in Bertin certainly suggests that even in the context of impoundment, not just inventory searches, it's got to be by reference to some sort of standardized protocol. So I think we just want to be careful about how we describe what Bertin sort of held. And that's why we discussed some of the cases that came after Bertin talking about. Bertin certainly stands for the proposition that if there are standardized procedures in place for the impoundment, then that will almost always be reasonable, a reasonable impoundment. We do not think Bertin stands for the idea that you must have standardized procedures. And that's why some of these circuits have come out saying you don't have to have them. We're going to look at a totality, a reasonableness sort of totality of the circumstances. And that's what we're encouraging the Court to do here. It's an open question, of course. We only get this if we find that the defendant had a privacy interest in the car, right? Precisely, Your Honor. Each basis is independent. Address that point, then. The expectation of privacy? Absolutely, Your Honor. In the reply papers, our adversary suggests that we are ignoring Rackus and proceeding entirely on an ownership theory. That couldn't be further from what we're doing. In fact, Rackus itself says that while we're not going to look only at ownership principles, we are — they are still relevant to a privacy inquiry. Here, we have a situation not where an authorized — first off, the owner did not give Mr. Lyle no permission to be in the car. The owner being the — The owner being the rental car, yes, precisely. We have a situation where, again, on this record, Mr. Van Praagh's girlfriend, who was apparently the authorized driver, though he never put a rental contract in evidence, gave him permission to drive that car. But that's a fallacy. She could not have given him permission to drive the car because he had a suspended license. It was illegal for him to drive. So you cannot — What you're saying is that her permission would not have been — It's invalid. It's totally invalid. Yes, okay. This isn't a situation like some of the cases where we have an unauthorized driver driving a car. And in the Sixth Circuit, which — This is like me giving permission to my 13-year-old to drive a car. Precisely. It's — again, we're not suggesting it's — these cases are controlled by the sort of ownership case — sorry, by the cases where — what we're saying is that the fact that he's in the car illegally, not just in violation of the rental agreement, makes this more like a case where someone is a burglar or is inappropriate, is illegally, unlawfully in a space, rather than a case where — And, of course, we don't have to get into — this is not by reference to what the friend, the girlfriend, knew or didn't know about his license. It has nothing to do — it doesn't — right. It's simply to say that the argument, well, my girlfriend gave me permission, it gets nowhere because she couldn't do that. She couldn't say drive the car because he hadn't — the law forbids it, essentially. I think unless the — sorry. What is the precise test? There are different tests. Obviously, there's a circuit split, but there seem to be different tests. As I understand it, the Third and Sixth Circuits have imposed a general rule that's rebuttable based on whatever exceptional circumstances might exist in a particular case. And in the Sixth Circuit, in fact, they find that the defendant rebutted the general rule. What is the test that the government proposes we adopt in this case? We're proposing that the court follow, essentially, sort of, I think, the way the Third Circuit has framed it is that a driver does not have — an unauthorized driver of a rental car does not have standing, i.e., a reasonable expectation of privacy in the rental car. Are you asking us to pronounce a test or are you just saying that when we look at the various facts here, rental car not rented by him in which he's not an authorized driver, no license to be driving the car, that that combination of circumstances is not one in which possession of the car is one society recognizes a reasonable expectation, rather than pronouncing you need this, you need that to satisfy it in all cases? I think there are multiple ways that the court could resolve this. One, Your Honor, is to say because Mr. Lyle was an unauthorized driver of a rental car, he did not have an expectation of privacy in that car. I think that's one. But to Your Honor's point, another way to resolve this case, without getting to that issue necessarily, is to say whether we were to look at the Sixth Circuit test, whether we were to look at the Third Circuit test, and I don't want to misspeak. I apologize. The Third Circuit did caveat its test. Right. So acknowledge the Sixth Circuit case that took the totality. Whether this court says we're going to look at a totality, or whether we are, for purposes of this case, or whether we're going to just simply say period, unauthorized driver can't have a reasonable expectation of privacy, either way the government wins. Because on these facts, society does not recognize an expectation of privacy. But you'd like us to adopt the broader test that you started out with. Yes. And we encourage that in our brief. But we think either way the government would prevail with either test. Unless the panel has questions, I would only be repeating some of the questions the Court had said about the proffer statement, pardon me, about the issue with the admission of the proffer statements. We believe, as we briefed, that the defendant put . . . Let's take the statements and understand exactly where you think the problem is. If an attorney steps up and says to a jury, we dispute the idea that Lyle was a methamphetamine dealer, is a statement of dispute enough to trigger a waiver? So, yes, as it's put here . . . Why is it a not guilty plea, a dispute of every element of the crime? To go back to Your Honor's first question before we get to the second one, we are, of course, putting this in context with the first line that Judge Chin flagged earlier. But now to go to the second part. A plea of not guilty is a very legal sort of . . . a very short legal statement that, at the end of the day, when you see whether it's by motions because we're going to suppress things, whether it's because you're going to find people on . . . whether it's flawed, whatever it might be, I am not going to be convicted of a crime. It can be honestly made without reference to the facts. To any facts. A person could have absolutely committed a crime and say, quite honestly, I am not guilty because I'm going to have a bunch of legal reasons or you're going to find the government hasn't carried its burden, a million different things. And, in fact, if defense counsel here had not said the first part about methamphetamine for his own use and had simply said where we dispute is the evidence that he was a dealer or something along those lines or what we dispute is the government has not carried its burden. Words matter in this context. And that's what Judge Chin's most recent opinion in Roseman stands for. Words matter. How you put things matters in this context. And here they affirmatively said that the methamphetamine was for his own use  Not the evidence, but the very . . . The idea. So putting that all together, we think Judge Crotty did not err in admitting these proffer statements. Unless the panel has further questions, I'll rest on our brief. Thank you. Thank you. Thanks again, Your Honors. Judge Loh here, I would reasonably suggest that if you lent your keys to a 13-year-old, excuse me, to put things into the trunk or to take things out of the trunk, that would be completely reasonable. It would not be that you have not . . . You understood that the hypothetical was to drive. Well, exactly. That's exactly my point. And that I should be put in prison in addition to my son. That's exactly . . . You hit on it because this has nothing to do with whether or not he could drive the car, his expectation of privacy in the trunk. It's whether he had lawful or authorized possession over the trunk of the car. And if the 13-year-old isn't on the rental contract, this 13-year-old can still be authorized by the lessee of the car to put things into and out of the trunk. There was no evidence that that was the limit of the authorization. The evidence was that your client, Crawford, was that he was authorized to drive the car. It was in that context that he put something in the trunk. No. The affidavit says that he was authorized to use the car, which includes a number of things. Obviously, it was driving, but it wasn't the driving. You were seen driving the car. It's true that he was driving, but the driving is not the basis for why he has the expectation of privacy. The expectation of privacy is because he and he alone and his girlfriend have the exclusive right to access the trunk. You are saying that if the scenario were different, that is, that if the police officers had not seen him driving, but he approached the rental car, opens the trunk, closes the trunk, then there's no basis at all to determine that he doesn't own or hasn't actually rented the rental car. To respond, I think that what the police see or don't see is irrelevant to the threshold question, which is whether he has a reasonable expectation of privacy. That's what Rackus says that the question is. And the question is when someone who unquestionably— Because now he's saying, I have an expectation of privacy in the contents of the car. The circumstances of the possession are that he's driving it, and he's not authorized to do that. You offered no evidence that the girlfriend said, I gave him separate authority to store things in my car and to drive the car. The second, she wasn't empowered to give. There's no evidence of that. Well, Judge Radji, if the 13-year-old can put things into and out of the trunk and has an expectation of privacy in that, he or she doesn't lose that expectation of privacy if he or she then later decides to take the car for a joyride. That later aspect does not change. In that theory, anything that your client possessed in the car would not be subject to seizure or search on the facts here because, well, he could have been a passenger and had the gun in the car or had the drugs in the car or whatever. And I'm not sure you either argued that below or that you've got authority for it. I want to ask you a question about the admission of your client's statements. Could you tell me how your client is prejudiced by the admission of his proffer statements given that his post-arrest statements almost to the same effect were admitted? I just want to make sure I understand why we might not have a harmlessness conclusion here. Yeah, I have at least three responses to the prejudice. The first is that, well, the first is obviously that we believe that the post-arrest statements should have been suppressed as well as part of this other Fourth Amendment issue. But that's the threshold. We don't accept that. Yeah. So beyond that, it's because the proffer statements were well beyond what was merely in the post-arrest statement. In the post-arrest statement, all he says is that you— What was said or represented, I don't know which Mr. Nutter, but— Oh, that one. That one was at 483 of the transcript. The statements in the proffer are pretty much consistent with the statements that were elicited yesterday, which are the arrest statements. And I didn't dispute the statement that said he distributed blah, blah, blah. Well, they were consistent only to the extent that we believe that even if the proffer— even really rebut the fact that there's the dispute— That's a separate argument. I'm not saying to you, given that the post-arrest statements came in, just point us to what the prejudice is from the proffer statements. Okay. And, again, I think that's twofold. One is that the proffer statements refer to him at least acting as a courier to go out and affirmatively deliver drugs to people, whereas all the post-arrest statement says is that he basically could guess what was in there because he knew that Anthony Tarantino was a meth addict and he had seen Tarantino put the drugs into the car. So that, first of all, is a very significant difference between whether or not— That's number one. What's your other one? Number two is that because the co-conspirator, the cooperating witnesses, presented testimony that was so incredible, the government was continuously, through its closing argument, trying to distance themselves and hammer on all these other things, and thus repeating over and over. And I think at pages 12 through 16 of the blue brief is where I go into all the prejudice from all the statements that are being made by the government throughout its closing arguments in order to try to hammer home these issues from the proffer statement. And I would respectfully address your honors to that discussion there. Thank you very much. Cabin House? I want to go back to the question you asked me, which I sort of brain froze on. You have to speak into the mic or we can't hear you or pick you up. Okay. Bruton says that it's a Sixth Amendment violation to present evidence in a co-defendant's confession that implicates the defendant because the defendant doesn't have the ability to cross-examine that witness. The violation is not that it's government misconduct. The violation is that the defendant is being presented with evidence that he can't rebut. So it's not a novel issue. But you don't think that ever has recognized a Bruton error by a co-defendant? Well, what I would ask your . . . I mean, I am certain that there is no case that holds that where the co-defense counsel brings out the redaction as opposed to the redaction being brought up by the government, that that's a Bruton error. But I . . . with your permission, I'll do some research afterwards. I am fairly certain . . . You had your chance to brief this. And in any event, this is not . . . this wasn't preserved. The government argues, though, that in fact, by defense counsel bringing out these other individuals, it was more helpful than harmful. Why don't you address that? Well, first of all, there were two statements. Those other names related only to the proffer. They did not relate to the post-arrest statement. So that argument doesn't help the government. As you said, one of those statements was equally as prejudicial. There were separate witnesses that testified to the two statements. The point is that when all the dust settled, the jury had a half dozen, if not more, of possible people who were the referenced individual. Not in context, but even if it was, the law is very clear that what you don't want the jury to do is speculate on why certain names were left out for legal reasons and other names were left in, and that jurors are not stupid, and that the obvious answer . . . and I think we cite cases to this effect in our brief . . . that they'll figure out, if it's for legal reasons, they'll look over at the defense table and say, oh, that must be the reason. And that if anything, it places . . . it forces them to . . . or it encourages them to speculate even more. I believe that's pretty clear case law, both in this circuit as well as Supreme Court. The judge gave a limiting instruction as well. Only on final instructions. He didn't give one contemporaneously. Not sought either, right? Right. I mean, that's a given throughout the whole case, is nothing was sought. Separate issue. Separate issue, yeah. All right, thank you very much. May I just raise one quick thing? Very quick. Just to lay it out, because as a matter of . . . I just think it's unfair, is . . . I know this is not going to go anywhere, but I think it's important for the court to consider when you look at the sentencing issue, that my client was diagnosed in 2005 with full-blown AIDS. He's already way outlived his life expectancy, so it is basically a death sentence he's been given. And neither the government nor the court addressed that issue. Thank you. Thank you to all sides for the vigorous arguments. Thank you. We're going to take the case under advisement.